IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **99-cv-2127-JLK**

**CHARLES KAMMERER,**

    Plaintiff,

v.

**ENESCO CORPORATION,**

    Defendant.

---

**ORDER**

---

Kane, J.

This breach of contract/misrepresentation action arises out of two one-year term employment contracts between one-time Enesco sales associate Charles Kammerer and Defendant Enesco Corporation. The initial contract was the result of negotiations between the parties leading to Kammerer's transfer from a sales position in South Carolina to a position in Colorado, a transfer Kammerer says he made based on representations by the company that the Denver northeast territory to which he was moving enjoyed a $650,000 per year sales volume, just below the $750,000 national sales average for company territories.

According to Kammerer, the Denver northeast territory proved "at best" to be a $500,000 territory which, had he had an accurate understanding of its value, would have dissuaded him from leaving South Carolina. The territory performed even worse than that, and Kammerer filed suit. Kammerer asserts claims for fraud, negligent

misrepresentation and concealment based on the representations that Denver northeast was a $650,000 territory when Enesco knew, or had reason to know, it was not.  In addition, Kammerer asserts claims for breach of contract based on the provision in his 1997 and 1998 sales contracts regarding a 5% deduction from his monthly sales commissions for his pro rata share of Enesco's corporate and regional showroom expenses.  Kammerer contends Enesco breached this term of both contracts by taking the full deduction each year he was in Colorado despite the fact that no regional showroom was located or opened in Colorado.  According to Kammerer, the contract required the deduction to be adjusted down under those circumstances.

I grant Enesco's Motion for Summary Judgment in part and deny it in part.  Specifically, and upon careful consideration of the parties' briefs –  together with the letter contracts, Mr. Kammerer's deposition, Kammerer's admissions, Mr. Olson's affidavit, and the other documents and correspondence submitted with those briefs – I order that summary judgment enter against Kammerer and in favor of Enesco on Kammerer's breach of contract and concealment claims.  Applying a liberal Rule 56(c) standard to the evidence presented with respect to the representations made and actions taken to effect Kammerer's move from South Carolina to Colorado, I will allow Kammerer's fraud and negligent misrepresentation claims to proceed, but only for the initial 1997 Colorado contract year.

### *Breach of Contract Claim.*

"Interpretation of a written contract is generally a question of law for the court."

*Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). "It is only where the terms of an agreement are ambiguous or are used in some special or technical sense not apparent from the contractual document itself that the court may look beyond the four corners of the agreement in order to determine the meaning intended by the parties." *Id.* at 1314. "Whether ambiguity exists is also a question of law." *Id.*

The language of the letter contracts is unambiguous with respect to the 5% monthly sales commission deduction for showroom expenses: all sales associates contributed to those expenses up to a maximum of $5,000, regardless of whether that associate's particular region had a showroom because associates had access to and used showrooms all over the country.

Under the contracts, sales representative are charged 5% of their monthly commissions up to a maximum of $5000 annually for showroom costs as an estimate of each representative's prorated share of "overall facility costs of the [corporate and regional] showrooms and any regional trade show endeavors." 1997 Contract (attached as Ex. 2 to Def.'s Mot. Summ. J.). "ENESCO apportions the showroom expense among all of the Principal Sales Representatives involved, by prorating the overall facility costs of the showrooms and your accounts [sic] anticipated total usage of the showrooms." *Id.* Even if this language could be viewed as ambiguous, Kammerer's own admissions preclude any different interpretation. Kammerer admits (1) he knew there was no showroom in the Denver region at the time he signed the 1997 and 1998 contracts; (2) he understood he would be assessed the standard 5% deduction even though there was no

3

showroom in Colorado; and (3) that he had access and attended shows with his accounts at corporate showrooms in other regions in both contract years.  Resp. at 7 (admitting Def.'s Undisputed Fact Nos. 38, 39, 40, and 42).  Under these circumstances, no claim for breach of contract will lie.

### *Misrepresentation Claims.*

Kammerer asserts claims under three different theories of actionable misrepresentation: fraudulent misrepresentation; negligent misrepresentation; and concealment.  His claim for concealment fails for want of any evidence to support that Enesco, or Enesco's Mr. Olson, had any actual and specific "knowledge" that the Denver territory was of significantly lower value in terms of sales volume than the $650,000 total annual sales represented.  Because a defendant's "knowledge" of the allegedly material existing fact withheld is a necessary element of a claim of concealment, *see Berger v. Security Pacific Information Sys., Inc.*, 795 P.2d 1380, 1385 (Colo. App. 1990)(delineating elements), this lack of evidence doom Kammerer's concealment claim.

Kammerer's claims for fraudulent and, in the alternative, negligent, misrepresentation survive summary judgment, but only for the initial contract year of 1997.  Kammerer has produced evidence that he was told the Denver territory was "average" and worth at least $650,000 in sales, annually, and that he accepted the 1997 sales contract and moved from South Carolina to Colorado in reliance on those representations.  He has also produced evidence that once he took over the Denver northeast territory, he found inventory problems, alienated customers, and a reallocation

of valuable accounts from that territory to another associate. Kammerer Affid. ¶¶ 16-18. Under a liberal view of Rule 56(c), *see* A. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. Law. R. 982, 1132 (June 2003), this evidence is sufficient to state a claim either that Olson and Enesco were reckless in the assessment of the value of the Denver territory or, in the alternative, were negligent in their representations.

Kammerer's claims, however, are limited to the initial 1997 contract and he can state no claim for fraud based upon his agreeing to the 1998 employment term. The evidence in the record demonstrates unequivocally that Kammerer knew, by May 1997, of the problems associated with the Denver territory because he wrote a memorandum to Olson setting them forth. Because Kammerer had knowledge of the true facts about his territory when he agreed to the new 1998 term, he cannot be heard to assert that agreement was the result of fraud. *See Holland Furnace Co. v. Robson*, 402 P.2d 628, 630-31 (Colo. 1965)(it is a defense to fraud "that the defrauded party, with full knowledge of truth respecting false representation, elected to continue to carry out the agreement").

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's breach of contract and concealment claims, as well as to his alternative claims for fraudulent or negligent misrepresentation related to his 1998 contract term. Defendant's Motion is DENIED as to Plaintiff's fraudulent and negligent

misrepresentation claims related to the 1997 contract and his move from South Carolina to Colorado. This case will be set for pretrial conference forthwith, and be offered the earliest possible trial date available.

Dated this 17th day of November, 2005.

BY THE COURT:

**s/John L. Kane**
Senior Judge, U.S. District Judge